UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GINGER M.[1] | |
| Plaintiff, | Case No. 2:22-cv-00445-BLW-CWD |
| v. | **REPORT AND RECOMMENDATION** |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration,[2] | |
| Defendant. | |

**INTRODUCTION**

Plaintiff filed a Complaint with the Court seeking judicial review of the

Commissioner's denial of her application for a period of disability and disability insurance

benefits.[3] (Dkt. 1.) The matter is fully briefed and at issue. (Dkt. 15, 20, 21.) Having

carefully reviewed the parties' memoranda and the entire administrative record (AR),

the Court will recommend that the decision of the Commissioner be reversed and remanded for

the reasons set forth below.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security Administration on July 9, 2021.

[3] As of December 1, 2022, the Federal Rules of Civil Procedure were amended to include Supplemental Rules for Social Security Review Actions under 42 U.S.C. § 405(g). As such, the Court adopts the terms "Complaint," "Plaintiff," and "Defendant," in lieu of the former terminology (i.e., "Petition," "Petitioner," and "Respondent").

**REPORT AND RECOMMEDATION - 1**

**BACKGROUND**

On December 9, 2018, Plaintiff filed a Title II application for a period of disability and disability insurance benefits. (AR 15.) In the application, she claimed disability beginning October 9, 2018. (AR 15.)

The application was denied initially and on reconsideration, and a telephonic hearing was conducted on July 13, 2020, before Administrative Law Judge (ALJ) MaryAnn Lunderman. The ALJ heard testimony from Plaintiff and Jennifer Bowes, an impartial vocational expert. (AR 15.) At the conclusion of the hearing, the ALJ indicated she was requesting a consultative examination and further vocational expert evaluation before reaching a decision. (AR 92.)

On March 19, 2021, Plaintiff underwent a consultative physical evaluation conducted by James Bailey, M.D., at the request of the ALJ. (AR 1527 – 1539.) On or about August 12, 2020, Plaintiff submitted a written opinion that she independently solicited after the hearing from vocational expert Dan McKinney. (AR 468 – 69.)

Plaintiff objected to Dr. Bailey's consultative examination report and requested a supplemental hearing. (AR 15.) The ALJ held a supplemental hearing by telephone on July 19, 2021. (AR 15.)[1] At this hearing, the ALJ took testimony from Plaintiff and Diane Kramer, an impartial vocational expert. Plaintiff's representative requested that Dr. Bailey be subpoenaed to testify at the supplemental hearing. (AR 15, 477 - 78.) The request was

---

[1] At both hearings, Plaintiff was represented by Dorene Carney, a non-attorney representative. (AR 15.)

REPORT AND RECOMMEDATION - 2

denied by the ALJ on the grounds that Plaintiff's objections to Dr. Bailey's opinions went to their weight, which the ALJ explained she would evaluate in the written decision. (AR 15, 40.)

The ALJ issued a written decision on September 10, 2021, finding Plaintiff had not been under a disability from October 9, 2018, through the date of the decision. (AR 28.) Plaintiff timely requested review by the Appeals Council, which denied her request on August 29, 2022. (AR 1 – 6.) Plaintiff timely appealed this final decision to the Court on October 24, 2022. (Dkt. 1.) The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## THE ALJ'S DECISION

When evaluating the evidence contained in the administrative record and presented at a hearing, the ALJ must follow a five-step sequential process in determining whether a person is disabled, or continues to be disabled, within the meaning of the Social Security Act. 20 C.F.R. § 404.1520, 404.1594, 416.920, 416.994.[2] At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date of

---

[2] *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013), sets forth the five-step review process as follows: "The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in 'substantial gainful activity' and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id*. § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id*. If the process continues beyond the third step, the fourth and fifth steps consider the claimant's 'residual functional capacity' in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id*. § 416.920(a)(4)(iv)-(v)."

REPORT AND RECOMMEDATION - 3

October 9, 2018. (AR 18.) At step two, the ALJ found Plaintiff had the following medically

determinable, severe impairments: "fibromyalgia; diabetes mellitus with neuropathy;

gastroparesis; gastroesophageal reflux disease; kidney stones; urinary retention; migraines;

essential hypertension; generalized anxiety disorder; and depression." (AR 18.)

At step three, the ALJ found that Plaintiff did not have an impairment or

combination of impairments which met or were medically equal to any listed impairments.

(AR 18 - 19.)

At step four, the ALJ found that Plaintiff retained the residual functional capacity

(RFC)[3] to perform light work, as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), with

the following limitations:

> [T]he climbing of ramps and stairs must be limited to frequently
> while the climbing of ladders, ropes, or scaffolds must be
> entirely precluded from work duties as assigned. Stooping,
> ending at the waist, kneeling, crouching, and crawling must be
> limited to occasionally. **With the left upper extremity,
> handling, fingering and reaching to the front, laterally, and
> overhead must be limited to occasionally.** Within the assigned
> work environment there must be less than occasional exposure
> to hazards, such as machinery and heights. Assigned work must
> be limited [to] simple unskilled tasks with an SVP of 1 or 2 and
> reasoning level of 1 or 2. The assigned tasks must have minimal
> change in the tasks as assigned and the tasks must require no
> more than occasional contact with supervisors and coworkers
> and **no contact with the public**. The noise level within the
> assigned work area must be limited to moderate and the

---

[3] Residual functional capacity is the most a claimant can still do despite her limitations. 20 C.F.R. §
404.1545(a)(1). It is an assessment based upon all of the relevant evidence including the claimant's
description of her limitations, observations by treating and examining physicians or other persons, and
medical records. *Id*. The responsibility for determining claimant's RFC lies with the ALJ. 20 C.F.R. §
404.1546(c).

**REPORT AND RECOMMENDATION - 4**

wearing of sunglasses while working must be allowed in the
assigned workplace. Finally, **the assigned workplace must
have ready access to a restroom**.

(AR 20.) (emphasis added).  Relying upon testimony from vocational expert Diane
Kramer, who testified at the second hearing, the ALJ assessed that Plaintiff was unable to
perform her past relevant work as a home attendant, industrial cleaner, or cashier. (AR 26,
53 - 57.)

The ALJ therefore proceeded to step five. The ALJ noted Plaintiff was fifty years of
age on the alleged disability onset date, and she had at least a high school education. (AR
27.) Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined
that there were jobs that existed in significant numbers in the national economy that
Plaintiff could perform. (AR 27.)

The ALJ relied upon the testimony of VE Kramer as the basis for finding an
individual with the assessed RFC would be able to perform the requirements of the
following representative occupations: routing clerk, collator operator, and office helper.
(AR 27.) The ALJ found VE Kramer's testimony was consistent with the information
contained in the Dictionary of Occupational Titles. (AR 27.) To the extent it was not "(for
example, the DOT does not address ready access to a restroom…and does not specify the
extremity with which manipulative activities are performed)," the ALJ concluded VE
Kramer's opinions were reasonably based upon her professional experience and education.
(AR 28.)

**REPORT AND RECOMMEDATION - 5**

Accordingly, the ALJ determined Plaintiff was not disabled from October 9, 2018, through the date of the decision, September 10, 2021. (AR 28.)

## STANDARD OF REVIEW

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports Plaintiff's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of

the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

## DISCUSSION

The following issues are raised on appeal:

1.     Whether the ALJ erred because she unreasonably relied upon VE Kramer's

testimony and did not consider the testimony of VE Bowes or VE McKinney.

2.     Whether the ALJ erred because her evaluation of the medical opinion of Dr.

Bailey was not supported by substantial evidence.

No other issues are raised by Plaintiff on appeal.

**1.     Vocational Expert Testimony.**

**A.     Testimony of Bowes, McKinney, and Kramer**

At the first hearing, the ALJ asked VE Bowes to assume a hypothetical individual with

the following RFC:

> Limited to light exertional work. Postural activities are limited to
> frequently for climbing ramps and stairs. However, the
> hypothetical individual must never climb ladders, ropes, or
> scaffolds. There can be unlimited balancing, occasional stooping,
> bending at the waist, kneeling, crouching, bending at the knees,
> and crawling. **Manipulatively, with the left upper
> extremity…[r]eaching to the front and/or laterally and
> overhead, handling and fingering must be limited to
> occasionally**. There must be less than occasional exposure to
> hazards in the assigned workplace…The assigned work must be
> limited to simple, unskilled tasks, with an SVP of 1 or 2 and a
> reasoning level of 1 or 2. The assigned task must have minimal
> change in the task as assigned and must require no more than
> occasional contact with supervisors and coworkers, and **no
> contact with the public**…Finally, **there must be ready access
> within the assigned work area to a restroom**.

**REPORT AND RECOMMEDATION - 7**

(AR 88 – 89.) (emphasis added.)

Bowes testified that this "combination of factors with the fingering even unilaterally as well as no public contact and ready access to the restroom would rule out employability." (AR 89.) When questioned further by the ALJ concerning the restriction on manipulative ability with the left upper extremity, Bowes explained that "most positions require bilateral" use of the upper extremities on a frequent basis, "unless there is public contact allowed." (AR 90.) Bowes testified that, if a claimant is restricted to occasional use of upper extremities, the one available job of "sandwich board carrier, which has occasional hands use," would not have ready access to a restroom. (AR 90.)

The ALJ next asked the VE to assume all of the same limitations, but she changed the limitation regarding public contact to "occasional." Bowes testified that, even with a limitation to occasional contact with the public, the restriction requiring ready access to a restroom would rule out all employment. (AR 91.) Thus, "even with occasional left upper extremity reaching overhead handling and fingering [sic] and no limitations on the right upper extremity," Bowes testified there was "no work available" for the hypothetical individual. (AR 91.)

The ALJ asked Bowes if her opinion was consistent with the Dictionary of Occupational Titles, her experience, or both. (AR 91.) Bowes testified: "It's based on both. It's based on the Dictionary of Occupational Titles, which classifies the reaching and handling and fingering, and then with my experience as adding in the cases of unilateral versus bilateral." (AR 91.) In response to follow up questioning by the ALJ focused on the restriction of occasional reaching, handling and fingering with the left upper extremity, Bowes clarified that

**REPORT AND RECOMMEDATION - 8**

positions are available if a person is limited in that fashion, but these positions require more

than just infrequent contact with the public. (AR 92.) In other words, she explained that there

are positions that would allow for frequent use of only one upper extremity, but that all of these

positions would require public interaction. (AR 92.) Bowes confirmed that her testimony was

consistent with the Dictionary of Occupational Titles (DOT) and the Selected Characteristic of

Occupations (SCO). (AR 92.)

Following the first hearing, Plaintiff's representative asked VE Dan McKinney to

provide a written opinion. (AR 468.) McKinney assumed a hypothetical individual with the

following limitations:

> Light exertional work; frequent climbing of ramps and stairs; no
> climbing of ropes and ladders; unlimited balance; occasional
> stoop, bend, crouch, crawl; **occasional reaching overhead or
> laterally with the left upper extremity**; **occasional
> handling/fingering**;[4] less than occasional exposure to hazards;
> simple, unskilled work with an SVP of 1 or 2, and a reasoning
> level of 1 or 2; minimal change in assigned tasks; occasional
> contact with supervisors and coworkers; **no contact with the
> public**; and **ready restroom access within the work area**.

(AR 468.)[5] (emphasis added.)

In McKinney's opinion, fourteen jobs in the DOT fit the above hypothetical, but they

were "odd lot jobs" or "part-time work…An individual with this profile cannot obtain and

maintain full-time competitive employment in any occupation with jobs that constitute a labor

---

[4] McKinney's report did not indicate that the handling/fingering restriction applied only to the left upper
extremity. The Court therefore assumes the limitation of occasional handling/fingering applies to both upper
extremities, as did the ALJ. (AR 28.)
[5] McKinney's hypothetical utilized abbreviations for certain occupational terms. The Court spelled them
out.

**REPORT AND RECOMMENDATION - 9**

market." (AR 468.) McKinney also opined that, even with a change from no contact to

occasional contact with the public, such an individual could not obtain and maintain full-time

competitive employment. (AR 469.)

At the second, supplemental hearing on July 19, 2021, VE Kramer was first asked to

assume a hypothetical individual with the following limitations:

> Limited to light exertional work, postural activities are limited
> frequently for climbing ramps and stairs, never ladders, ropes, or
> scaffolds, balancing is unlimited, occasionally stoop, bend at the
> waist, kneel, crouch, and crawl. **With the left upper extremity,
> reaching to the front and/or lateral as well as overhead,
> handling, and fingering must be limited to occasionally**. There
> should be less than occasional exposure to hazards and – in the
> assigned work area, such as machinery and heights. Finally, the
> assigned work must be limited to simple, unskilled tasks, with an
> SVP of 1 or 2, a reasoning level of 1 or 2, and the assigned tasks
> must have minimal change and the task as assigned requiring no
> more than occasional contact with supervisors, co-workers, and **no
> contact with the public**.

(AR 53.) (emphasis added.) Kramer testified that the jobs of "routing clerk, 222.587.038…,

collator operator, 208.685-010,…[and] office helper, 239.567-010" would all be available. (AR

54.)

The ALJ next asked Kramer to add the limitation of moderate noise level and permit the

wearing of sunglasses. (AR 54.) Kramer testified that these additional limitations would not

change her opinion. (AR 54.) The ALJ asked whether the jobs identified were consistent with

the DOT and Selected Characteristic of Occupations (SCO) occupational descriptions. (AR

55.) Kramer testified that they were. (AR 55.) She also testified that she "took into

consideration everything that you identify, the issues with the left appendage, then their

**REPORT AND RECOMMEDATION - 10**

reaching capability to occasional. Yes, everything that you did identify I factored into my knowledge and understanding of the three positions that I identified for you." (AR 55.)

The ALJ next asked a second hypothetical that she represented was "similar…[6] According to this hypothetical…**fine fingering would be limited to occasionally, while handling, including grasping, would be unlimited**.[7] The assigned work area must be inside with **readily accessible restrooms**,…and **no contact with the public.**" (AR 56.) (emphasis added.) Initially, Kramer responded that all three of the previously identified jobs would remain available. (AR 56.) She explained that the routing clerk position required only occasional fingering; the office helper and collator operator positions required frequent reaching and handling; and the collator operator position required occasional fine fingering. (AR 56.) She later corrected herself, however, testifying that the office helper position required frequent fingering, such that it would be eliminated based upon the second hypothetical. (AR 56.)

The ALJ next asked if there would be a job that could replace the position of office helper. Kramer responded: "[A] lot of the positions I can identify have the occasional fingering, but unfortunately, they all are dealing with the public,…so, I guess my answer within the light exertion that I could come up with, the answer is no." (AR 57.) However, she

---

[6] The ALJ asked the second hypothetical because it was "consistent with the CE [consultative examination] that we recently got." (AR 55.) Dr. Bailey's consultative examination findings indicated the limitation of occasional fine fingering applied to both upper extremities. (AR 55, 25, 1534 - 1539.)

[7] Consistent with Dr. Bailey's CE, these limitations apply bilaterally. (Dkt. 25, 55, 1534 – 1539.) Dr. Bailey's report indicated specifically that "grasping is not restricted." Other than the specific limitations mentioned, which did not include reaching limitations, Dr. Bailey indicated that "no other postural, manipulative, or environmental limitations" were warranted. (AR 1533.)

**REPORT AND RECOMMEDATION - 11**

confirmed the other two jobs — routing clerk and collator operator — remained available. (AR 57.) The ALJ next asked whether the DOT specifically considered things like sunglasses, terrain, and reaching. (AR 57.) Kramer responded, "No. That's based on my 31 years of work experience and actually being able to assess these positions while different individuals are performing or placing them in these type of work positions…." (AR 57.) Kramer explained that her answer would not change if considering "ready access to a restroom." (AR 57.)

Plaintiff's representative had the opportunity to question Kramer. She asked Kramer to assume a hypothetical very similar to the ALJ's second hypothetical, with the following changes: occasional ramps or stairs; occasional balance; **no reaching overhead or laterally with the left upper extremity**; **no contact with the public**; and **ready restroom access** within the work area. (AR 58.) Kramer answered that such an individual would be employable, "[b]ecause the individual is right hand dominant. So, the left appendage is an assistive, so the positions that I did identify, there's no overhead reaching, and laterally, it would be as an assistive, the right appendage is unaffected." (AR 58.) Kramer confirmed that the positions of collator operator and routing clerk would be available. (AR 58 – 59.) She also confirmed that, if fingering were limited to "occasional," such a limitation would not preclude employment as a collator operator or routing clerk. (AR 61.)

Plaintiff's representative asked additional questions concerning restroom access. Kramer testified that, if an individual used the restroom one additional time per hour, or once

per hour for ten minutes at a time, or once an hour for five minutes at a time, she would not be employable in the two previously identified jobs of routing clerk and collator operator. (AR 63 – 64.)

B.    Analysis.

Plaintiff identifies three components of the ALJ's RFC that she contends were outcome determinative. Pl.'s Brief at 6 – 7. (Dkt. 15.). These three components are: occasional fingering, handling, and reaching overhead, front or laterally with the left upper extremity; no public contact; and ready access to a restroom in the assigned workplace. (AR 20); Pl.'s Brief at 5. Relying on VE Kramer's testimony, the ALJ found that, with these limitations, three jobs exist in the national economy that Plaintiff could perform. (AR 27.) Plaintiff argues the ALJ erred, because she: (1) did not address the conflicting testimony of VE Bowes; (2) did not adequately explain the reasons for rejecting VE McKinney's testimony; (3) did not ask VE Kramer a hypothetical that included all the limitations in the ALJ's RFC; and, (4) did not define "ready restroom access." Pl.'s Brief at 7 – 11.

Defendant contends that the ALJ reasonably relied on the testimony of VE Kramer, who was the only VE to consider Dr. Bailey's opinions and the complete medical record. Defendant insists, therefore, that the hypotheticals posed to VE Kramer provided an adequate basis for the ALJ's conclusions, because she was the only VE to be presented with the RFC that the ALJ ultimately adopted. Def.'s Brief at 4. (Dkt. 20.)

At step five of the five-step inquiry, the Commissioner bears the burden of demonstrating that the claimant can perform "some other work that exists in 'significant

**REPORT AND RECOMMEDATION - 13**

numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (citing 20 C.F.R. § 404.1560(b)(3)). The ALJ can do this through the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines (the "Grids"). *Tackett*, 180 F.3d at 1100 – 1101.

It is well established that, if the ALJ properly relied on the testimony of one VE, she does not need to address the testimony of another VE. *Brando v. Colvin*, 2017 WL 2364194, at *23 (D.N.J. 2017) ("where an ALJ properly relies on the testimony of one vocational expert, '[s]he need not address the testimony of another VE.'"); *see also Ramirez v. Comm'r of Soc. Sec. Admin.*, 463 Fed. Appx. 640, 643 (9th Cir. 2011) ("[D]espite the ALJ's lack of explanation for not relying on the testimony of the unavailable vocational expert from the first hearing, the ALJ properly relied on the vocational expert's testimony at the second hearing concerning plaintiff's past relevant work[.]")[8]; *Villa v. Astrue*, 2012 WL 2847730, at *3 (C.D. Cal. 2012) ("If the ALJ properly relied on the testimony of one VE, he need not address the testimony of another VE."), *aff'd sub nom. Villa v. Colvin*, 540 Fed. Appx. 639 (9th Cir. 2013) (Where second VE provided sufficient support for her conclusion, the ALJ did not err in failing to discuss earlier testimony from a different VE); *Johnson v. Colvin*, 2015 WL 1954644, at *4 (W.D. Pa. 2015) ("As a general matter, the ALJ properly relied on the vocational expert's testimony from the Second Hearing, and was not required to address the vocational expert's

---

[8] Ninth Circuit Rule 36–3 provides for the citation of unpublished opinions issued on or after January 1, 2007. *See also* Fed. R.App. Proc. 32.1(a).

**REPORT AND RECOMMENDATION - 14**

testimony from the First Hearing."). Accordingly, neither the ALJ's failure to address the testimony of VE Bowes, nor any failure to adequately explain the basis for rejecting VE McKinney's testimony, constitutes a basis for remand.

Nonetheless, the ALJ may rely upon vocational expert testimony only if the record contains substantial evidence to support the ALJ's conclusion that, with the RFC found to apply, there are jobs in the national economy existing with significant numbers that Plaintiff can perform. *Washington v. Berryhill*, No. 4:17-cv-382-CAS, 2018 WL 1950438 at *9 (N.D. Fla. Apr. 25, 2018). *See also Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995) (an ALJ may rely on expert testimony provided by a vocational expert); *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000) (agreeing with the majority of circuits, including the Ninth Circuit, that "the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so."); *Gaspard v. Comm'r of Soc. Sec.*, 609 F.Supp.2d 607, 618 (E.D. Tx. 2009) ("[T]he court must still investigate whether the 'record reflects an adequate basis for relying on vocational expert testimony."). In other words, a finding based on unreliable vocational expert testimony "is equivalent to a finding that is not supported by substantial evidence and must be vacated." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1282 (11th Cir. 2020) (quoting *Chavez v. Berryhill*, 895 F.3d 962, 968 (7th Cir. 2018)).

Plaintiff contends the ALJ's hypotheticals did not include all of the limitations in the RFC the ALJ ultimately adopted, while Defendant claims the contrary. When the ALJ's hypothetical question to a VE "inaccurately describes the claimant's true limitations," then "the expert's testimony has no evidentiary value to support a finding that the claimant can perform

jobs in the national economy.'" *Leach v. Kijakazi*, 70 F.4th 1251, 1255 (9th Cir. 2023)
(citations omitted). In that situation, "the vocational expert's testimony cannot constitute
substantial evidence to support the ALJ's findings" unless the ALJ's failure to include all of the
claimant's limitations was harmless. *Id.* (citations omitted).[9]

On the other hand, when the ALJ's hypothetical question to a VE "<u>accurately</u> describes
the claimant's limitations…an ALJ ordinarily may rely on the expert's testimony." *Id.*
(citations omitted). However, "if there is an 'apparent conflict' between the expert's testimony
and the Dictionary of Occupational Titles,…the ALJ has an affirmative duty to ask the expert
to explain the conflict and then determine whether the vocational expert's explanation for the
conflict is reasonable before relying on the expert's testimony to reach a disability
determination." *Id*. (citations and internal quotation marks omitted). The conflict "must be
'obvious or apparent' to trigger the ALJ's obligation to inquire further." *Id*. The Court may
affirm "if the ALJ's failure to reconcile the apparent conflict was harmless." *Id*.

Here, the Court finds that VE Kramer's testimony does not constitute substantial
evidence to support the ALJ's nondisability finding, because the hypothetical questions
inaccurately described the limitations relevant to the VE's analysis that were ultimately
adopted by the ALJ in the RFC. Although Defendant insists Kramer was the only VE presented
with the complete RFC, a close examination of the hearing testimony does not support
Defendant's position. The three relevant limitations according to Plaintiff in light of Bowes's,

---

[9] Defendant did not raise a harmless error argument.

REPORT AND RECOMMENDATION - 16

McKinney's, and Kramer's testimony were the restrictions placed on reaching, handling, and fingering; the elimination of all public contact; and the requirement of ready access to a restroom. (AR 89 – 92; 53 – 59.) Accordingly, the Court does not find that the differences in the hypothetical questions posed to VE Kramer and which Defendant identified in her brief, such as bending ability, noise levels, and wearing sunglasses, were consequential to the disability determination. *See* Def.'s Brief at 5.

Rather, the testimony of VE Kramer reflects three distinct hypotheticals which were different in material respects when compared to the RFC set forth in the ALJ's written decision. The ALJ's first hypothetical to VE Kramer limited the left upper extremity to occasional handling, fingering, and reaching to the front, laterally, and overhead; included no public contact; but omitted the requirement later adopted in the RFC that there be "ready restroom access." (AR 53.) In response, VE Kramer testified that a claimant would be physically able to work, and identified three jobs: routing clerk, collator operator, and office helper. (AR 27, 53.)[10]

Although the second hypothetical question the ALJ asked VE Kramer included the requirement of ready restroom access, it relaxed the previous limitations imposed on the use of upper extremities. The hypothetical question allowed for occasional fine fingering bilaterally and, consistent with Dr. Bailey's written report, both upper extremities could perform

_____

[10] Recall, above, that VE Bowes testified that a claimant limited to occasional handling, fingering, and reaching overhead, front, and laterally with the left upper extremity; no public contact; and ready restroom access would be unemployable. Similarly, VE McKinney considered an individual limited to occasional reaching overhead or laterally with the left upper extremity; occasional handling and fingering bilaterally; no public contact; and ready restroom access unemployable.

REPORT AND RECOMMEDATION - 17

unlimited handling, which includes grasping, as well as unlimited reaching in all directions. (*See* AR 55, 1533.)[11] The requirement that there be no public contact was left unchanged, and the requirement that there be ready restroom access was added. With these specific limitations, VE Kramer testified that only two jobs—the jobs of routing clerk and collator operator—would be available. (AR 55 – 56.)

Finally, the third hypothetical asked by Plaintiff's representative built upon the second hypothetical.[12] It, too, did not include the same limitations the ALJ later adopted in the RFC. (AR 20.) Plaintiff's representative changed the second hypothetical to eliminate reaching overhead and laterally with the left upper extremity, with no reaching limitations imposed upon the right upper extremity. (AR 58.) Because the questioning related to the ALJ's second hypothetical, the limitations of occasional fine fingering bilaterally, unlimited handling and grasping bilaterally, unlimited reaching to the front bilaterally, ready access to a restroom, and no public contact remained unchanged. (AR 58.) VE Kramer testified that the left appendage would be "assistive" with regard to lateral reaching. According to VE Kramer, two jobs— routing clerk and collator operator—would remain available. (AR 56, 58.)

The Court's analysis of the salient restrictions in the three hypothetical questions asked of VE Kramer reveals that the RFC assessed by the ALJ does not align with VE Kramer's testimony. Bowes was specifically asked in one hypothetical to assume the same limitations ultimately contained in the ALJ's RFC. VE Kramer was not. It is not clear to the Court how the

---

[11] The ALJ specifically stated that the second hypothetical was "consistent with the CE that we recently got." (AR 55.) *See also* n. 6 and 7, supra.
[12] The ALJ clarified that the follow up questioning by Plaintiff's representative pertained only to the positions in "hypo 2." (AR 58.)

**REPORT AND RECOMMENDATION - 18**

ALJ synthesized the different components of the three hypotheticals to arrive at the conclusion that, with the RFC adopted, three jobs remained which Plaintiff could perform. *See, e.g., Jeffrey G. v. Saul*, No. 1:19-CV-03053-JTR, 2020 WL 13504835, at *4 (E.D. Wash. Mar. 27, 2020) (finding VE failed to explain how an individual limited to occasional reaching and gripping with one arm and only able to use that arm as an assist in lifting and handling could still perform cleaning jobs requiring frequent or constant reaching and handling.).

VE Kramer did not testify that the right upper extremity could assist the left in any other manner except with lateral reaching. At no point was VE Kramer asked to assume a hypothetical individual restricted to occasional use of the left upper extremity for all tasks (handling/grasping, fingering, and reaching in all directions) with the added limitations of ready restroom access and no public contact.[13] In hypotheticals two and three, which were the

---

[13] The distinctions with reaching, handling/grasping, and fingering are important because the job descriptions in the DOT indicate that the general tasks for the three jobs identified include detailed manipulation of merchandise, controls, machines, or other objects. DICOT 208.685-010, Collator Operator, 1991 WL 671753; DICTOT 239.567-010, Office Helper, 1991 WL 672232; DICOT 222.587-038, Router, 1991 WL 672123. The jobs of collator operator and office helper require frequent reaching, handling, and fingering, while the job of routing clerk requires frequent reaching and handling, and occasional fingering. DICOT 208.685-010, Collator Operator, 1991 WL 671753; DICOT 239.567-010, Office Helper, 1991 WL 672232;  DICOT 222.587-038, Router, 1991 WL 672123. When the DOT is silent on whether reaching, handling, or fingering must be performed bilaterally, the ALJ may not assume that the requirements are unilateral. *Lamear v. Berryhill*, 865 F.3d 1201, 1206 (9th Cir. 2017); *Jeffrey G. v. Saul*, No. 1:19-CV-03053-JTR, 2020 WL 13504835, at *3 (E.D. Wash. Mar. 27, 2020).

Although the parties did not raise this issue as error on appeal, it appears that VE Kramer's testimony in response to the three hypotheticals conflicted with the DOT, because the DOT is silent regarding a limitation requiring ready restroom access and the limited ability to use one upper extremity for reaching, handling and fingering. With regard to the RFC assessed by the ALJ, it is unclear how the right upper extremity would function as an assistive appendage to meet the frequent reaching, handling, and fingering requirements for the jobs of collator operator and office helper; or how the right upper extremity would function as an assistive appendage to meet the occasional fingering requirement and frequent reaching and handling requirements of the job of routing clerk. It is also unclear how the ALJ, on the basis of VE Kramer's testimony, reached the conclusion that all three jobs required no overhead reaching. *See, e.g., Lisa P. v. Comm'r of Soc. Sec.*, No. 3:19-CV-05147-TLF, 2020 WL 1443875, at *6 (W.D. Wash. Mar. 24, 2020) ("Two of the jobs cited by the VE – general clerk and office helper – are office-based jobs that do

**REPORT AND RECOMMEDATION - 19**

two hypothetical questions asked of VE Kramer that included ready restroom access and no public contact, the left upper extremity was more functional than in the RFC adopted by the ALJ.

Accordingly, the Court finds VE Kramer's testimony does not reasonably support the ALJ's conclusion that Plaintiff could perform the jobs of routing clerk, collator operator, and office helper with the left upper extremity restricted as set forth in the RFC, combined also with the need for ready restroom access and no public contact. Therefore, the Court cannot conclude with confidence that the ALJ properly relied on the vocational expert's testimony as substantial evidence. *See Massachi v. Astrue*, 486 F.3d 1149, 1154 (9th Cir. 2007); *see also Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001) ("In order for an ALJ to accept vocational expert testimony that contradicts the [DOT], the record must contain 'persuasive evidence to support the deviation.'" (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995)).

**2. Additional Assignments of Error**

Plaintiff also challenges the ALJ's failure to quantify "ready restroom access,"[14] the evaluation of Dr. Bailey's testimony,[15] and the denial of Plaintiff's request to subpoena Dr.

---

not obviously require more than occasional overhead reaching").

[14] Ready access to a restroom implies that the time required for bathroom breaks would not exceed normal breaks. *Rhonda E.G. v. Saul*, No. 8:20-cv-01423-KES, 2021 WL 2262552 at *7 (C.D. Cal. June 3, 2021). *See also Learnaham v. Astrue*, No. 2:09-cv-01143, 2010 WL 3504936, at *5 (E.D. Cal. Sep. 1, 2010); SSR 96-9p, 1996 WL 374185, at *6 (noting that a normal workday contemplates "a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals"); Programs Operations Manual System ("POMS") DI 24510.005(C)(2)(b) ("Consider an 8-hour workday and a 5 day work week (with normal breaks, e.g., lunch, morning and afternoon breaks) in evaluating the ability to sustain work-related functions.").

[15] Plaintiff argues that the ALJ did not provide a persuasive reason to reject Dr. Bailey's conclusion that she

**REPORT AND RECOMMEDATION - 20**

Bailey[16]. (Dkt. 15.) As this claim is being remanded for further proceedings, the ALJ must reconsider the entire record in making her decision. *Jeffrey G. v. Saul*, No. 1:19-CV-03053-JTR, 2020 WL 13504835, at *7 (E.D. Wash. Mar. 27, 2020). Further, if the ALJ takes additional testimony from another (or the same) vocational expert, the ALJ's reconsideration of her findings at steps four and five may be dispositive. Therefore, the Court will not address Plaintiff's remaining challenges to the ALJ's decision here. *See Marcia v. Sullivan*, 900 F.2d 172, 175 (9th Cir. 1990) ("Because we remand for reconsideration at step three, we do not reach the other arguments raised.").

## CONCLUSION

For the above reasons, the Court finds the ALJ's decision was not free from legal error. Accordingly, the Court will recommend that this matter be reversed and remanded.

---

could not reach overhead with either upper extremity. (AR 1536.) The objective medical evidence reflected a low-grade insertional tear of the supraspinatus with mild supraspinatus and infraspinatus tendinosis of the right shoulder. (AR 23, 1412). Plaintiff also subjectively reported pain in her right shoulder. (AR 1056.) The ALJ did not discuss these specific findings in relation to Dr. Bailey's opinions, other than a conclusory statement that the record reflected Plaintiff was more symptomatic on the left side. (AR 25.) That statement does not unequivocally demonstrate that Plaintiff had no symptoms on the right side.

[16] The regulations provide that the ALJ may issue subpoenas for the appearance and testimony of witnesses "when it is reasonably necessary for the full presentation of the case." 20 C.F.R. § 404.950(d)(1).

**REPORT AND RECOMMEDATION - 21**

# RECOMMENDATION

**NOW THEREFORE IT IS HEREBY RECOMMENDED that:**

1) The decision of the Commissioner of Social Security be **REVERSED**;

2) This action be **REMANDED** to the Commissioner for further proceedings consistent with this opinion;

3) The Remand be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002); and

4) Judgment be entered in favor of Plaintiff.

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

Dated: **December 04, 2023**

Candy W. Dale
United States Magistrate Judge

**REPORT AND RECOMMEDATION - 22**